## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**TYRONE ORTIZ,** )<br>)<br>**Defendant.** )<br>) | Case No. 3:22-cr-0020 |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**ADAM SLEEPER, APPELLATE CHIEF**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
   *FOR PLAINTIFF*

**MATTHEW CAMPBELL, FEDERAL PUBLIC DEFENDER**
**KIA D. SEARS, ASSISTANT FEDERAL DEFENDER**
OFFICE OF THE FEDERAL PUBLIC DEFENDER
ST. THOMAS, U.S. VIRGIN ISLANDS
   *FOR DEFENDANT TYRONE ORTIZ*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** is Defendant Tyrone Ortiz's ("Ortiz") Motion to Dismiss Indictment under the Second Amendment, filed on August 11, 2023. (ECF No. 61.) The Government filed a timely opposition on September 8, 2023. (ECF No. 71.) The Government also filed a Notice of Supplemental Authority on February 5, 2024. (ECF No. 75.) Ortiz, thereafter, filed a supplemental motion on February 6, 2024. (ECF No. 76.)

On February 9, 2024, the Court conducted a hearing, after which, allowed the parties to provide supplemental briefing due to evolving nature of this area of law. (ECF No. 78.)

Both parti filed their supplemental briefs in accordance with the Court's directive on March 1, 2024. (ECF Nos. 79, 80.)[1]

## I. BACKGROUND

On March 13, 2022, a grand jury indicted Ortiz with violating 18 U.S.C. §§ 922(k) and 924(a)(1)(B) ("Possession of Firearm With an Obliterated Serial Number") (Count One) and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Possession by a Prohibited Person") (Count Two). (ECF No. 22.) More specifically, Count One charges that on or about March 10, 2022, Ortiz knowingly possessed firearms, a Glock 23 GEN4 and a Glock 30 GEN4, that had been shipped and transported from Georgia to St. Thomas and from which the manufacturer's serial numbers had been removed, altered, and obliterated. (*Id.* at 1.) Count Two charges that on or abour March 10, 2022, Ortiz, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed firearms, a Glock 23 GEN 4, serial number BGXZ60, a Glock 23 GEN4, and a Glock 30 GEN 4, which were shipped and transported in interstate commerce. (*Id.* at 2.)

## II. LEGAL STANDARD

The Second Amendment of the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. On June 23, 2022, the Supreme Court articulated the standard for analyzing Second Amendment challenges as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Under *Bruen*, courts are required "to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

> For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly

---

[1] Both of the parties' supplemental brief addressed only 18 U.S.C. § 922(g)(1).

> similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id.* at 26–27. With respect to "modern regulations that were unimaginable at the founding," courts consider "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation," which "requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 28-29. The Supreme Court explained that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* at 29 (citation omitted). "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30. "[T]he language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions *as they were when the instrument was framed and adopted*." *Id.* at 39 (citation omitted).

Applying *Bruen* in a civil case raising an as-applied challenge to 18 U.S.C. § 922(g)(1), the Third Circuit found that "the people" protected by the Second Amendment "unambiguously refers to all members of the political community, not an unspecified subset," including persons formerly convicted of offenses punishable by more than one year imprisonment. *Range v. Att'y Gen. of U.S*, 69 F.4th 96, 101 (3d Cir. 2023) (quoting *D.C. v. Heller*, 554 U.S. 570, 580 (2008)). In another civil case, raising a facial challenge to a Pennsylvania's firearm statues that "have the practical effect of preventing most 18-to-20-year-old adult Pennsylvanians from carrying firearms," the Third Circuit found that "the people" under the Second Amendment "presumptively encompass all adult Americans, including 18-to-20-year-olds." *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 127 (3d Cir. 2024). The Third Circuit explained that *Bruen* has created a new, two-step analytical approach to assessing challenges under the Second Amendment:

> At the first step, a court determines whether "the Second Amendment's plain text covers an individual's conduct." That "'textual analysis' focuse[s] on the 'normal and ordinary' meaning of the Second Amendment's language." If the text applies to the conduct at issue, "the Constitution presumptively protects that conduct."

*Id.* at 129 (internal citations omitted). Courts "are not limited to looking through [the] retrospective lens at the first step." *Id.* at 131.

> At the second step, a court determines whether the regulation in question "is consistent with the Nation's historical tradition of firearm regulation." If it is, the presumption made at the first step of *Bruen* is overcome, and the regulation in question can stand. To aid the court in that second-step analysis, the government bears the burden of identifying a "founding-era" historical analogue to the modern firearm regulation. We are to look to the founding because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." The question is "whether historical precedent from before, during, and even after the founding evinces a comparable tradition of regulation." In considering that precedent, however, we discount "[h]istorical evidence that long predates" 1791 and "guard against giving postenactment history more weight than it can rightly bear." Assessing the similarity of current regulations to those of the founding era calls on us to consider both "how and why the regulations [being compared] burden a law-abiding citizen's right to armed self-defense."

*Id.* at 129. The Third Circuit held "that the Second Amendment should be understood according to its public meaning in 1791" and rejected historic evidence of "statutes from the mid-to-late nineteenth century, as each was enacted at least 50 years after the ratification of the Second Amendment." *Id.* at 134.

### III. DISCUSSION

Ortiz contends that § 922(k) and § 922(g)(1) prohibit conduct protected by the Second Amendment and the Government cannot show the requisite historic analogues. The Government asserts that § 922(k) is consistent with the Second Amendment and § 922(g)(1) is facially constitutional and as applied to Ortiz.

In his motion, Ortiz did not mention an as-applied challenge to § 922(k) and he failed to make any as-applied argument or factual assertions in connection with his § 922(g)(1) challenge, apart from his conclusory assertion that "count two must be dismissed as it is unconstitutional, both facially and as applied to Mr. Ortiz, under *Bruen* and *Range*." (ECF No.

61 at 7.) Moreover, Ortiz did not file a reply to the Government's opposition brief; rather, he attempted to raise the as-applied challenge arguments for the first time at the evidentiary hearing. The Court finds that Ortiz waived any as-applied challenge to both § 922(g)(1) and § 922(k) by failing to raise them in his opening brief. *Bradley v. Att'y Gen. of U.S.*, 603 F.3d 235, 243 (3d Cir. 2010) (finding that arguments not appearing in the party's opening brief or reply are waived); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'") (citation omitted).

### A. Facial Challenge to § 922(k)

Section 922(k) prohibits any person from possessing "any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." 18 U.S.C.A. § 922(k). Although the Supreme Court stated in *Heller* that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," *Heller*, 554 U.S. at 582, it also explained that "the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.

This Court has previously rejected identical facial challenges to § 922(k). In *United States v. Walter*, the Court found, consistent with *Heller* and *Bruen*, "that firearms with obliterated serial numbers are not typically used by law-abiding citizens for lawful purposes," concluding that § 922(k) regulates conduct that is not within the scope of the Second Amendment. No. 3:20-CR-0039, 2023 WL 3020321, at *5 (D.V.I. Apr. 20, 2023). The Court also found that § 922(k) regulates conduct that "is not the mere possession of any firearm but rather the possession of a firearm with a removed, obliterated, or altered serial number," concluding that § 922(k) is not within the scope of the Second Amendment. *United States v. Dangleben*, No. 3:23-MJ-0044, 2023 WL 6441977, at *4-5 (D.V.I. Oct. 3, 2023).

Ortiz failed to cite any binding or persuasive[2] authority decided after the Court's decisions in *Walter* and *Dangleben* that would cast doubt on any aspect of the Court's reasoning and conclusions in those decisions. *See United States v. Avila*, No. CV 22-CR-224-WJM-1, 2023 WL 3305934, at *5 (D. Colo. May 8, 2023) ("Like numerous other courts around the country have held post-*Bruen*, the Court concludes that § 922(k) does not implicate the Second Amendment.") (collecting cases); *United States v. Dixson*, No. 4:21CR0054 AGF (JSD), 2023 WL 7102115, at *3 (E.D. Mo. Oct. 26, 2023) (finding that "even after *Bruen*, the Second Amendment is properly construed to exclude weapons that are "not typically used by law-abiding people for lawful purposes"); *United States v. Sing-Ledezma*, No. EP-23-CR-823(1)-KC, 2023 WL 8587869, at *4 (W.D. Tex. Dec. 11, 2023) ("Because § 922(k) prohibits only the possession of 'highly unusual' weapons, it falls outside the ambit of the Second Amendment's protection."). For the same reasons articulated in *Walter* and *Dangleben*, the Court finds that § 922(k) is not within the scope of the Second Amendment.

### B. Facial Challenge to § 922(g)(1)

Section 922(g)(1) prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm." 18 U.S.C. § 922(g)(1). The Supreme Court explained in *Heller* that "nothing in our

---

[2] Ortiz relies on two cases: (1) *United States v. Price*, 635 F. Supp. 3d 455 (S.D.W. Va. 2022), finding that "[t]he conduct prohibited by Section 922(k) falls squarely within the Second Amendment's plain text," *id.* at 460; and (2) *Rigby v. Jennings*, 630 F. Supp. 3d 602 (D. Del. 2022), a case challenging Delaware statutes criminalizing possession of untraceable firearms, finding that "[t]he Second Amendment, which protects 'the right of the people to keep and bear Arms,' protects the possession of untraceable firearms and unfinished firearms and receivers because its text covers the possession of firearms," and therefore "the Second Amendment presumptively extends to the conduct prohibited by these statutes," *Id.* at 613. The Court does not find *Price*'s conclusory statement that "[t]he conduct prohibited by Section 922(k) falls squarely within the Second Amendment's plain text" persuasive because it is based solely on a hypothetical, without reasoning or citation to any authority. Similarly, the Court does not find *Jennings*' conclusion that the Second Amendment's text protects the possession of untraceable firearms persuasive because it is based on the finding that the contested statutes "burden rights protected by the Second Amendment," *Jennings*, 630 F. Supp. 3d at 613, which is the issue analyzed <u>after</u> a challenger establishes that the conduct is protected by the Second Amendment and the burden shifts to the Government to show that "modern and historical regulations impose a comparable burden on the right of armed self-defense" and "that burden is comparably justified." *Bruen*, 597 U.S. at 29.

Case: 3:22-cr-00020-RAM-RM    Document #: 85    Filed: 04/10/24    Page 7 of 9

*United States v. Ortiz*
Case No. 3:22-cr-0020
Memorandum Opinion
Page **7** of **9**

opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," *Heller*, 554 U.S. at 626, which are "presumptively lawful." *Id.* n.26. After *Heller*, the Third Circuit considered whether § 922(g)(1) was constitutional on its face, finding that "*Heller*'s list of 'presumptively lawful' regulations is not dicta," but "was outcome-determinative" and binding on the court. *United States v. Barton*, 633 F.3d 168, 171-72 (3rd Cir. 2011). The Supreme Court in *Bruen* noted that *Bruen* did not disturb "anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 597 U.S. at 72 (Alito, J. concurring); *see id.* at 80-81 (Kavanaugh, J. concurring, joined by Roberts, C.J.) (stating that "the Second Amendment allows a 'variety' of gun regulations" and quoting the language from *Heller,* reiterated in *McDonald*, about the longstanding prohibitions on the possession of firearms by felons that are presumptively lawful). In *Range*, the Third Circuit acknowledged *Heller*'s presumptively lawful language, as reiterated in *McDonald,* and noted with approval in *Bruen*. *Range*, 69 F.4th at 103; *see id.* at 110-11 (Ambro, J. concurring, joined by Greenaway, Jr., J., and Montgomery-Reeves, J.) (noting that, in *Barton*, "we held that '*Heller*'s list of 'presumptively lawful' regulations is not dicta,' which "aligned us with the Ninth and Eleventh Circuits" and that "*Bruen* reaffirms that felon-in-possession laws are presumed to be lawful").

Ortiz asserts, without citation to any legal authority in support, that *Barton* does not survive *Bruen* "[b]ecause the Third Circuit did not employ the text-and-history test." (ECF No. 79 at 2.) The Government asserts that *Bruen* "provides no basis for re-examining *Barton*" and despite some tension between *Barton* and the Third Circuit's statements in *Range*, including that it was dubious that the Federal Firearms Act of 1938 "was 'longstanding' enough to warrant *Heller*'s assurance," *Range*, 69 F.4th at 104, *Range* was an as-applied challenge and did not overrule *Barton*'s holding that *Heller*'s statement about longstanding prohibition on the possession of firearms by felons were not dicta. (ECF No. 80 at 2.) The Court agrees with the Government.

Nothing in *Bruen* or *Range* disturbs the Third Circuit's holding that "*Heller*'s list of 'presumptively lawful' regulations is not dicta," but "was outcome-determinative" and

binding on the court. *Barton*, 633 F.3d at 171-72. The Court finds that pursuant to *Heller*, as reaffirmed by *Bruen* and undisturbed by *Range*, § 922(g)(1) is presumptively constitutional. *See United States v. Williams*, No. 3:21-CR-34, 2024 WL 665851, at *9 (M.D. Pa. Feb. 16, 2024) ("this Court remains bound by the Supreme Court's decision in *Heller* and its progeny and Defendant's motion based on the facial constitutionality of § 922(g)(1) will be denied"); *United States v. Craig*, No. CR 21-338, 2024 WL 449386, at *3 (W.D. Pa. Feb. 6, 2024) ("Section 922(g)(1) is not facially unconstitutional."); *United States v. Velazquez*, No. CR 23-657 (RMB), 2024 WL 49690, at *11, 14 (D.N.J. Jan. 4, 2024) (stating that "*Bruen* reaffirms that felon-in-possession laws, like § 922(g)(1), are presumed to be constitutional" and finding that defendant failed to rebut the presumption, and post-*Bruen* "courts throughout the country have consistently rejected facial challenges like the one here"); *United States v. Dockery*, No. CR 23-068-KSM, 2023 WL 8553444, at *10 (E.D. Pa. Dec. 11, 2023) (noting that "nearly every opinion in this Circuit addressing this issue after *Range* has held that § 922(g)(1) is constitutional . . . on its face" and finding that defendant "failed to show that § 922(g)(1) is unconstitutional in all circumstances"); *United States v. Collier*, No. 2:21CR375, 2023 WL 7386568, at *3-4 (W.D. Pa. Nov. 8, 2023) (stating that "*Range* does not reflect the facial dismantling of 18 U.S.C. § 922(g)(1)" and "any expansion of *Bruen* and/or *Range* beyond their individualized settings properly must await further guidance from the United States Court of Appeals for the Third Circuit and/or the Supreme Court").

Legal presumption is "the proof created by law," *Coffin v. United States*, 156 U.S. 432, 461 (1895), that can be rebutted. In light of this Court's holding that § 922(g)(1) is presumed to be constitutional, "[a] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)).[3] Ortiz

---

[3] As with other courts, this Court recognizes that the above facial challenge standard imposing the burden on the challenger to establish constitutional infirmity under all circumstances "is arguably inconsistent with the standard set forth" in *Bruen*, which "places the burden on the government to establish the validity of its regulations by showing a history and tradition of similar regulations." *United States v. Jones*, No. CR 21-472-RJC, 2024 WL 776470, at *4 (W.D. Pa. Feb. 26, 2024). The Court notes the absence of guidance from the Supreme Court and the Third Circuit on this issue and is mindful of the narrow and limited scope of the as-applied holding in *Range*. *United States v. Hall*, No. 23-1430, 2024 WL 510512, at *2 (3d Cir. Feb. 9, 2024) ("*Range* involved an as-applied challenge to 18 U.S.C. § 924(g)(1) by someone with a single, decades-old conviction of

*United States v. Ortiz*
Case No. 3:22-cr-0020
Memorandum Opinion
Page **9** of **9**

failed to make the requisite showing. Accordingly, the Court finds that Ortiz failed to rebut the presumption that § 922(g)(1) is constitutional on its face.

## IV. CONCLUSION

For the foregoing reasons, Ortiz's Motion to Dismiss Indictment under the Second Amendment, ECF No. 61, is denied. An accompanying Order of even date follows.

**Date:** April 10, 2024                                         /s/ *Robert A. Molloy*
                                                                              **ROBERT A. MOLLOY**
                                                                              **Chief Judge**

---

minor welfare fraud. Nothing in that decision suggests that it applies to someone with Hall's long, serious criminal history.") (citation omitted).