**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:22-cr-0020 |
| **TYRONE ORTIZ,** | ) |
| Defendant. | ) |

**APPEARANCES:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**EVERARD E. POTTER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR THE UNITED STATES OF AMERICA,*

**MATTHEW A. CAMPBELL, FEDERAL PUBLIC DEFENDER**
**KIA D. SEARS, ASSISTANT FEDERAL DEFENDER**
OFFICE OF THE FEDERAL PUBLIC DEFENDER
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR TYRONE ORTIZ.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge**

      **BEFORE THE COURT** is Defendant Tyrone Ortiz's ("Ortiz") Motion to Suppress Statements. (ECF No. 24.) The Court referred this matter to the Magistrate Judge for a Report and Recommendation ("R&R"). On January 19, 2023, the Magistrate Judge issued an R&R recommending that the Court deny the motion. (ECF No. 52) The Defendant filed an objection to the R&R on February 1, 2023. (ECF No. 53.) For the reasons stated below, the Court will adopt, in part, and reject, in part, the R&R.

### I. FACTUAL BACKGROUND

      After a de novo review of the record, including the testimony and exhibits presented at the suppression hearing, the Court agrees with the thorough factual and procedural background as set forth in the R&R's statement of facts. The Court therefore adopts the

statement of facts in full. The Court will refer to the facts only as necessary to analyze the issue raised in Ortiz's objections to the R&R.

On March 15, 2022, law enforcement officials arrested Ortiz on a complaint charging him with possession of a firearm with an obliterated serial number. Subsequent to his arrest, Ortiz was interviewed by Homeland Security Investigations ("HSI") Special Agent Justin Kurtz ("SA Kurtz") and United States Postal Inspector Eric Oram ("PI Oram"). On May 15, 2022, a grand jury returned a two-count indictment charging Ortiz with the following: (1) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); and (2) possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

Ortiz filed the instant Motion to Suppress Statements on May 16, 2022, seeking to suppress "all statements he made to law enforcement officers or other agents of the government." (ECF No. 24 at 1.) Ortiz argues that he had invoked his *Miranda* rights during the interview and that his rights were not scrupulously honored. *Id.* at 2. Ortiz further argues that any statements were the product of psychological coercion because agents suggested his continued silence would jeopardize his mother's employment with the HSI office.[1] Ortiz also alleges that he did not waive his right to remain silent.

The Government filed its opposition on May 31, 2022. (ECF No. 77.) On June 6, 2022, the Court referred Ortiz' motion to suppress to the Magistrate Judge for a Report and Recommendation. (ECF No. 28.)

The Magistrate Judge conducted an omnibus hearing on the motion on October 28, 2022. During the hearings, the Government presented the testimony of SA Kurtz, HSI Agent Christopher Lobdell, and PI Oram, recordings of the agents' interview with Ortiz (Exhibits 1a and 1b), and the "Statement of Rights" form (Exhibit 2) initialed but not signed by Ortiz. Ortiz did not testify nor present any witnesses or exhibits. The Magistrate Judge admitted all exhibits without objection.

---

[1] Although he does not expressly argue this point in his motion, during the hearing Ortiz additionally argued that SA Kurtz performed the functional equivalent of a custodial interrogation in violation of *Miranda* when he laid out the evidence against Ortiz prior to administering his *Miranda* warnings.

On January 19, 2023, the Magistrate Judge issued an R&R on the motion finding that: (1) the officers gave Ortiz his *Miranda* warnings; (2) Ortiz validly waived his *Miranda* rights; and (3) Ortiz's waiver of his rights and his statements were made knowingly, voluntarily, and intelligently. *See* ECF No. 52. Based on these findings, the Magistrate Judge recommended that the Court deny the Motion to Suppress. *See id.* at 12.

On February 1, 2023, Ortiz filed his objections to the Report and Recommendation. (ECF No. 53.) Ortiz first argues that the "uh-hm" and "[n]o" statements made while SA Kurtz summarized the evidence against Ortiz at the beginning of the interview were made in response to police interrogation and must be suppressed. *Id.* at 1-2. Ortiz further asserts that he neither explicitly nor implicitly waived his *Miranda* rights. *See id.* at 2. He argues that any statements he made were the result of psychological coercion because the interview took place near the time of his father's funeral and SA Kurtz "threaten[ed] not only his mother's job security, but her freedom . . .." *Id.* at 3-4. Finally, Ortiz argues that he unequivocally invoked his *Miranda* rights on three occasions and his invocations were not scrupulously honored; thus, all his statements must be suppressed.

## II. LEGAL STANDARD

### A. Objections to Report and Recommendation

Litigants may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." See Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). When a magistrate judge issues a report and recommendation, the Court is required to review de novo only those portions of the report and recommendation to which a party has objected. *See* Fed. R. Civ. P. 72(b)(3).

### B. *Miranda* Warnings

To safeguard an individual's Fifth Amendment privilege against self-incrimination, the Supreme Court has held that the government may not introduce statements made by an individual who is subject to "custodial interrogation" unless he first has been given his

*Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). However, a suspect may waive his *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting *Miranda,* 384 U.S. at 444). A waiver is voluntary, knowing, and intelligent where it is "the product of a free and deliberate choice rather than intimidation, coercion or deception" and is made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

A waiver need not be explicit to be effective. *See North Carolina v. Butler*, 441 U.S. 369, 375-76 (1979). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). A defendant's "subsequent willingness to answer questions after acknowledging that [the defendant] understood her Miranda rights is sufficient to constitute an implied waiver." *United States v. Velasquez*, 626 F.2d 314, 320 (3d Cir. 1980). This is because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis,* 560 U.S. at 385.

Irrespective of a valid Miranda waiver, "[t]he Self–Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Withrow v. Williams*, 507 U.S. 680, 688 (1993) (quoting U.S. Const., amend. V). This protection bars the introduction of statements to law enforcement that are not "voluntary." *Id.* A statement is voluntary only when the speaker's "will was not overborne," and the statement was the "product of an essentially free and unconstrained choice by its maker, that was the product of a rational intellect and a free will." *United States v. Swint,* 15 F.3d 286, 289 (3d Cir. 1994) (internal quotation marks omitted).

"[C]ourts look to the totality of circumstances to determine whether a confession was voluntary." *Withrow*, 507 U.S. at 693. Potential circumstances affecting the voluntariness of statements made include: (1) the length and location of the interrogation; (2) the defendant's maturity, physical condition, mental health and level of education; and (3) whether Miranda

warnings were given. *Swint*, 15 F.3d at 289. "[T]he crucial element" of the inquiry, however, is "police coercion." *Withrow*, 507 U.S. at 693 (emphasis added). "Unless there is 'police conduct causally related to the confession,' a confession is considered voluntary. Thus, a court will not hold that a confession was involuntary unless it finds that it was the product of 'police overreaching.'" *Swint*, 15 F.3d at 289 (citations omitted) (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)); *see also United States v. Flemmi*, 225 F.3d 78, 91 (1st Cir. 2000) ("[T]he Supreme Court has confined the voluntariness concept by holding that only statements procured by coercive official tactics should be excluded as involuntary." (original alterations and internal quotation marks omitted)).

### III. DISCUSSION

#### A. Pre-*Miranda* Statements

Ortiz argues that his statements made while SA Kurtz summarized the case in the beginning of the interview, namely, "um-hm" at 1:38 minutes in response to asking him to confirm the recited series of events, and "no" at 1:52 minutes in response to the statement "I don't think you're some high-level firearms trafficker," of Gov't Exhibit 1a, were the result of custodial interrogation in violation of *Miranda* and must be suppressed.

The Supreme Court has defined "interrogation" as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). This definition includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* Mere observations regarding a suspect's arrest are not made in violation of *Miranda*. *United States v. Benton*, 996 F.2d 642, 644 (3d Cir. 1993). Conversely "contrived situation[s] in which a suspect, arrested after a significant time interval following an offense, was brought to a police station and told of information which the police had accumulated linking him to the crime" may rise to the functional equivalent of interrogation. *Id.*; *see United States v. Green*, 541 F.3d 176, 187 (3d Cir.) (vacated on other grounds) ("[W]e can hardly imagine a more prototypical example of the "functional equivalent" of interrogation than when a suspect is shown a video in which he is depicted as engaging in a criminal act.").

The parties do not dispute that Ortiz was in custody when SA Kurtz began to speak with him. However, the facts at hand make up precisely the sort of "contrived situation" that the Third Circuit has indicated would constitute the functional equivalent of an interrogation. Law enforcement agents arrested Ortiz on March 15, 2022, for alleged activities occurring on or about March 10, 2022. *See* ECF No. 1. While Ortiz was being held at the HSI offices, he was interviewed by SA Kurtz. Prior to administering the *Miranda* warnings, SA Kurtz explained that he was going to lay out the case for Ortiz and proceeded to detail the evidence collected against him.

Perhaps the most telling, SA Kurtz knew that laying out the case would elicit an incriminating response because he made a point to instruct Ortiz to not interrupt during his summary. However, the attempt to minimize reasonable and foreseeable reactions to SA Kurtz's conduct does not make that conduct any less violative.

Because SA Kurtz's pre-*Miranda* recitation of the evidence against Ortiz was reasonably likely to elicit an incriminating response, the Court finds that it was the functional equivalent of custodial interrogation. Thus, the Court will reject the Magistrate Judge's finding that SA Kurtz's preliminary statements did not constitute an interrogation in violation of *Miranda*, and any pre-*Miranda* statements made by Ortiz will be suppressed.

**B. Whether Ortiz validly waived his *Miranda* rights**

Ortiz did not sign a form indicating he agreed to waive his rights, nor did he explicitly state he agreed to speak with agents. Thus, the Court must determine whether there was a valid implied *Miranda* waiver. This requires the Court to consider whether Ortiz was given his rights, whether he understood those rights, and whether any subsequent statements were the product of coercion.

On the recording of the interview, once he has completed his summary of the case, SA Kurtz is heard reading *Miranda* warnings from a Statement of Rights form. Several times during this reading SA Kurtz asks Ortiz if he understood what was being said. SA Kurtz testified that Ortiz appeared to understand his rights, and Ortiz cannot be heard to say anything to the contrary during the recording. Ortiz was provided with a Statement of Rights form after SA Kurtz finished explaining it to him, and he initialed each of the rights listed on

the Statement of Rights. *See* Gov't Exhibit 2. There is no basis to conclude that Ortiz did not understand those rights, and neither party argues as much. SA Kurtz further noted during the interview that Ortiz has a prior conviction. As a result, he would have been familiar with his *Miranda* rights from previous interactions with law enforcement. Thus, the Court concludes that the Ortiz was given and understood the *Miranda* warnings.

Further, Ortiz's conduct after the warnings indicates an implied *Miranda* waiver. After the *Miranda* warnings were administered, Ortiz neither invoked his *Miranda* rights nor remained silent. Instead, he responded to several of the agents' questions. As described above, this willingness, alone, is sufficient to imply a *Miranda* waiver.

Finally, there is no evidence that Ortiz's statements were the product of coercion. The interview lasted approximately forty minutes and Ortiz was interviewed by two agents SA Kurtz and PI Ortiz, who did not carry weapons. The interview itself was calm and conversational, as heard on the recordings.

Ortiz argues that agents coerced him into waiving his *Miranda* rights when they told him he "was facing a considerable amount of time," and threatened "not only his mother's job security, but her freedom" to force him to waive his right to remain silent. *See* ECF No. 53 at 2,4. Ortiz further argues that he was "uniquely vulnerable" due to the recent death of his father and that agents took advantage of his vulnerability. *Id.* at 3.

However, it is not coercive for officers to accurately relay the potential outcomes surrounding a case, even when those outcomes involve family members. *See United States v. Henderson,* No. CRIM.1:06-CR-0234, 2010 WL 1565295, at *4 (M.D. Pa. Apr. 19, 2010), aff'd, 437 F. App'x 96 (3d Cir. 2011) (explaining to a suspect that, if she were arrested, her children would be without guardians and agents would have to notify child protective services is not coercive). While the Third Circuit has not discussed whether threats to arrest family members constitute coercion, "courts have generally agreed that if there is probable cause to arrest the suspect's family member, the tactic is not coercive enough to render a confession involuntary." *United States v. Sater*, 477 F. Supp. 3d 372, 385–86 (M.D. Pa. 2020) (collecting cases).

*United States v. Ortiz*
Case No. 3:22-cr-0020
Memorandum Opinion
Page 8 of 11

According to the Affidavit in support of the Complaint in this matter, Custom and Border Protection officers seized a package containing illegal gun parts addressed to a Post Office Box located on St. Thomas. *See* ECF No. 1-1 at 2. During the interview, the agents stated that the PO Box belonged to Ortiz's mother. Gov't Exhibit 1a at 8:29. It logically follows that Ortiz would be facing considerable jail time and that law enforcement may have probable cause to investigate his mother. Stating these probabilities does not amount to coercion.

Additionally, the agents' only allusion to Ortiz's loss was when PI Oram offered Ortiz condolences at the outset of the interview. There is no indication that the agent intended the statement to be anything other than a polite acknowledgement, let alone a manipulative tactic. While the loss of a parent is certainly distressing, "a defendant's mental condition, by itself and apart from its relation to official coercion" doesn't render a statement involuntary. *Connelly*, 479 U.S. at 164. Thus, absent any other indication of coercion, Ortiz's emotional vulnerability has no effect here.

Accordingly, because Ortiz was read and understood his *Miranda* rights, showed a willingness to respond to agents' questions, and his statements were uncoerced, the Court finds that there is a valid implied *Miranda* waiver.

## C. Post-*Miranda* Statements

Unlike Ortiz's pre-*Miranda* statements, his post-*Miranda* statements in response to the agents informing him that he faced a considerable time based on his criminal history and the presence of obliterated serial numbers on the firearms, namely, "I mean, there is nothing going on, got it to protect myself just in case," and "everything is on me," at 4:03 and 5:54 minutes of Gov't Exhibit 1a respectively, do not need to be suppressed.

"[A] suspect's subsequent choice to waive his or her rights after a proper administration of *Miranda* warnings should ordinarily suffice to dissipate the coercive impact of the earlier confession and to demonstrate knowledge and voluntariness." *United States v. Johnson*, 816 F.2d 918, 922–23 (3d Cir. 1987) (citing *Oregon v. Elstad*, 470 U.S. 298, 311 (1985)). As the Court found above, Ortiz read, understood, and waived his *Miranda* rights. Since Ortiz waived his *Miranda* rights when he made his post-*Miranda* statements and the evidence does indicate any exceptional circumstances suggesting that his post-*Miranda*

statements were not voluntary, no basis exists to suppress them. *United States v. Booker*, No. CRIM. 05-170-5, 2012 WL 6106846, at *8 (E.D. Pa. Dec. 10, 2012) (finding that "Booker's 'subsequent choice to waive his . . . rights after a proper administration of *Miranda* warnings . . . suffice[s] to dissipate the coercive impact of the earlier [*Miranda* violation] and to demonstrate knowledge and voluntariness.'").

### D.  Whether Ortiz invoked his *Miranda* rights

Ortiz lastly argues that agents did not scrupulously honor the invocation of his *Miranda* rights over the course of the interview.

"[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452, 461 (1994). The invocation, however, must be clear and unambiguous before officers are required to cease questioning. *See id.* at 461-62. "Although a suspect need not 'speak with the discrimination of an Oxford don' . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. Invocations that are "ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel . . ." then interrogation may continue**.** *Id*. (emphasis in original.)

Ortiz points to three statements, namely, at 7:44 and 9:05 minutes of the Gov't Exhibit 1a recording, and at 3:28 minutes of the Gov't Exhibit 1b recording, which he alleges are invocations of *Miranda*.

As to his statement at 7:44 minutes, Ortiz contends that he states, "I don't feel like talking right now." (ECF No. 53 at 5.) In the R&R, the Magistrate Judge found that Ortiz said, "I don't know if I could talk right now" on the recording. (ECF No. 52 at 10 n.12) Having reviewed the recording, the Court agrees with the Magistrate Judge's finding.

The statement "I don't know if I could talk right now" is, by itself, ambiguous and equivocal. A reasonable officer faced with a sentence beginning with indecisiveness would

not necessarily conclude that a defendant is invoking his rights.[2] Further, prior to this statement, agents ask Ortiz if he is taking all the blame for the allegations, stating "Maybe there's a happy medium. Maybe there's information that you have that can still help you out a little bit . . . but we need to talk about it." Gov't Exhibit 1a at 7:27. "I don't know if I could talk right now" appears to be a response to that question directly, rather than a statement alluding to a general desire to stop questioning.[3] Thus, the Court finds that the statement at 7:44 minutes is ambiguous and equivocal, and that Ortiz did not invoke his *Miranda* rights at that time.

At 9:05 minutes of Gov't Exhibit 1a, Ortiz states that he found one of the three guns involved in the charges, which prompts SA Kurtz to say: "And then you took the other two from somebody. Is that a friend of yours?" In response, Ortiz states: "I don't want to say nothing else." *Id.* at 9:30 minutes. Ortiz argues that this statement is a valid invocation of his *Miranda* rights. The Court disagrees.

In the context of the conversation, Ortiz is again expressing discomfort with implicating third parties. This is a response to a specific question, rather than an unambiguous and unequivocal request for an attorney. The Court finds that Ortiz's statement at 9:05 minutes is not a valid invocation of Ortiz's *Miranda* rights.

Finally, at 3:28 minutes of Gov't Exhibit 1b, Ortiz states, "I don't have nothing to talk about" after the agents remark that Ortiz could help his situation by informing on others. The Court finds that Ortiz's statement is equally, if not more, equivocal than his prior statements, and it is made in response to an inquiry about implicating third parties. Thus, it could reasonably be construed as a desire not to answer questions about third parties.[4] The Court

---

[2] *See e.g. United States v. Barreras*, No. 2:19-CR-41, 2019 WL 6878821, at *8 (S.D. Ga. Nov. 25, 2019), *report and recommendation adopted,* No. 219-CR-41, 2019 WL 6878540 (S.D. Ga. Dec. 16, 2019) (finding that "I don't know. I don't really want to talk about it anymore" is equivocal and ambiguous).

[3] *See e.g. United States v. McWhorter*, 515 Fed. App'x 511, 517 (6th Cir. 2013) ("I don't want to talk to you anymore," was a response indicating the suspect did not want to talk about the subject of police force, not general invocation of the right to remain silent).

[4] *See e.g. United States v. Yodprasit,* No. CR15-4085-MWB, 2016 WL 1069671, at *6 (N.D. Iowa Mar. 17, 2016) ("I've got noth'n else to say—what I've already told you guys is what I wanna say" is not an unequivocal invocation)

*United States v. Ortiz*
Case No. 3:22-cr-0020
Memorandum Opinion
Page 11 of 11

finds that Ortiz did not unequivocally and unambiguously invoke his right to counsel at 3:28 minutes or at any time during the interview.

## IV.  CONCLUSION

For the reasons stated herein, Ortiz' objections as to the pre-*Miranda* statements are sustained and the Magistrate Judge's Report and Recommendation as to this point is rejected. The Court otherwise overrules all objections to the Report and Recommendation and adopts the remaining Report and Recommendation in full.

An appropriate Order follows.

**Date:** April 10, 2024          /s/  Robert A. Molloy

                              **ROBERT A. MOLLOY**
                              **Chief Judge**